UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BAILEY BRODRICK,
*Plaintiff*,

v.

NICHOLAS GILROY,
*Defendant.*

No. 3:24-cv-1772 (VAB)

**RULING AND ORDER ON MOTION TO STRIKE**

Bailey Broadrick ("Plaintiff") has brought suit against Nicholas Gilroy ("Defendant") for disclosure of intimate images in violation of 15 U.S.C. § 6851 ("Count One"), negligent and intentional infliction of emotional distress ("Counts Two and Three"), unreasonable publicity given to private life ("Count Four"), false light ("Count Five"), and promissory estoppel ("Count Six"), based on Mr. Gilroy's alleged publishing and distribution of intimate images of Ms. Broadrick online. Complaint, ECF No. 1 (Nov. 7, 2024) ("Compl.").

Mr. Gilroy has moved to strike portions of the Complaint. Mot. to Strike, ECF No. 25 (Dec. 10, 2024) ("Mot.").

For the following reasons, the motion to strike is **DENIED**.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

   A. **Factual Allegations**

In 2015, Ms. Broadrick alleges that, when she was a minor, she began "an on-and-off relationship" with Mr. Gilroy. Compl. ¶ 10.

On or around the summer of 2020, Mr. Gilroy allegedly requested that Ms. Broadrick share intimate photos and videos in an iCloud album, and allegedly "explicitly promised her that he

would neither share nor show the intimate photos or videos of her to any third parties." *Id.* ¶¶ 11–15.

In June 2020, while Ms. Broadrick was allegedly being treated for cancer and allegedly suffered from a "weakened emotional state" she continued sending intimate photographs and videos. *Id.* ¶¶ 16–19.

In 2020, Ms. Broadrick allegedly ended her relationship with Mr. Gilroy and deleted the iCloud album. *Id.* ¶ 21–22. She allegedly "began dating someone else" and "cut ties with [Mr. Gilroy] and ceased communicating with him." *Id.* ¶ 25.

On or around May 2023, Mr. Gilroy allegedly posted several intimate photographs of her on social media websites, *id.* ¶¶ 26–73, that allegedly "included [Ms. Broadrick]'s full name, photos of [her], or screenshots of [her] information on LinkedIn," *id.* ¶ 74. These photos allegedly included photos that Ms. Broadrick "was entirely unaware" Mr. Gilroy had taken that allegedly depicted her asleep in "a room where the two had stayed when she was recovering from cancer treatment." *Id.* ¶¶ 85, 87.

Ms. Broadrick alleges that "her treating physician informed her that stress is causing her cancer markers to increase," *id.* ¶ 104, and Mr. Gilroy's alleged actions "are the most significant source of stress in [her] life, and the only source of stress severe enough to cause her cancer markers to increase," *id.* ¶ 105.

### B. Procedural History

On November 7, 2024, Ms. Broadrick filed her Complaint. Compl.

On November 9, 2024, the Court granted Ms. Broadrick's request for a temporary restraining order. Order, ECF No. 12.

On November 13, 2024, the Court held a hearing on Ms. Broadrick's motion for a preliminary injunction, *see* Min. Entry, ECF No. 22, and granted a preliminary injunction. See Order, ECF No. 20.

On December 10, 2024, Mr. Gilroy filed his motion to strike. Mot.

On January 15, 2025, Ms. Broadrick filed her memorandum in opposition to the motion to strike. Mem. in Opp. Re Mot. to Strike, ECF No. 28 ("Opp'n").

## II. STANDARD OF REVIEW

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Resolution of a Rule 12(f) motion is within the discretion of the district court, and such motions are generally disfavored and should be infrequently granted. *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 15–16 (D. Conn. 2013).

"'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues." *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 225 (E.D.N.Y. 2015) (citation omitted). "A scandalous allegation is one that reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court." *Id.* (citation omitted).

"To prevail on a 12(f) motion, the moving party must demonstrate that: '(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant.'" *Id.* (quoting *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001)). A showing of prejudice is a necessary part of a Rule 12(f) motion to strike. *See Gssime v. Nassau*

*Cnty.*, No. 09-CV-5581(JS)(ARL), 2014 WL 810876, at *2 (E.D.N.Y. Feb. 28, 2014) (collecting cases).

The Second Circuit has long held that courts "should not tamper with the pleadings unless there is a strong reason for so doing," and that a motion to strike under Rule 12(f) should be denied "unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

### III.   DISCUSSION

Mr. Gilroy has moved to strike "[a]ll of the Introduction as it is plead," and alleges that "it is immaterial, impertinent and senseless" and "contains allegoric references that are unnecessary and clearly inflammatory." Mot. 1–2. Mr. Gilroy likewise moves to strike paragraphs 20, 25, 97, 100–102, 104, and 105 for being "immaterial to the Plaintiff's causes of action and impertinent." He also moves to strike paragraphs 123, 131, 132, 143, 144, and 151 under Rule 10(b) for "not stat[ing] facts but rather a conclusion of law found in a prior case." *Id.* at 2–4. Finally, Mr. Gilroy moves to strike Count Six, and argues that Plaintiff cannot state a cause of action for promissory estoppel because "[a] cause of action premised on Promissory Estoppel relies on facts establishing a contractual agreement and then a subsequent breach of that agreement" and "[t]he facts alleged do not support an action seeking relief premised on Promissory Estoppel; such relief is inconsistent with the facts alleging tortious conduct." *Id.* at 5.

The Court will address each argument in turn.

#### A. The Motion to Strike Allegedly Immaterial and Impertinent Allegations

Mr. Gilroy has moved to strike the introduction to the Complaint, and paragraphs 20, 25, 97, 100–102, 104, and 105 for being immaterial and impertinent and, as to the introduction "unnecessary and clearly inflammatory."

4

In response, Ms. Broadrick argues that this information is relevant to her claims, and Mr. Gilroy fails to show that they are immaterial and impertinent.

The Court agrees.

Mr. Gilroy fails to show that the paragraphs he moves to strike have "no essential or important relationship to the claim for relief," or "consist[] of statements that do not pertain to, and are not necessary to resolve, the disputed issues." *See Brady*, 101 F. Supp. 3d at 225. First, the introduction to the Complaint provides an overview of Ms. Broadrick's claims and allegedly quotes Mr. Gilroy's online posts, which are the subject of her claims.[1] *See* Compl. at 1–2. As a result, Mr. Gilroy fails to show that these allegations, which are clearly relevant to Ms. Broadrick's claims, are so redundant or scandalous as to warrant the disfavored remedy he seeks. *See also Lipsky*, 551 F.2d at 893 ("[C]ourts should not tamper with the pleadings unless there is a strong reason for so doing.").

---

[1] The introduction to the Complaint states the following:

> *"Exposing Bailey Broadrick's nudes without her consent makes me cum so fucking hard."* That is what the Defendant wrote when posting the Plaintiff's photos. *See* **Exhibit 1**.
> 
> One could have a moral compass pointing straight to Dante's Ninth Circle of Hell and still be appalled by the Defendant's conduct. Mr. Gilroy weaponized an imbalance of power between himself and Ms. Broadrick to coerce her into sending him nude photos. She did so, relying on Gilroy's promise that they would all be kept private. But he was not content to collect photos he could coerce out of her. Gilroy went to a shocking level of depravity by taking surreptitious nude photos of Broadrick when she was unconscious, sleeping off the exhaustion from cancer treatment.
> 
> Up to that point, Gilroy seems to have only collected these photos for his own enjoyment. That changed after Broadrick dumped Gilroy. After that, he began publishing the photos online, and he ramped up the humiliation by creating and publishing deepfakes of Broadrick engaged in sexual activity. He also solicited people to message Plaintiff Broadrick on LinkedIn, and shared identifying information in screenshots to make his desired harassment easier. Not content with this level of harassment, he even sent the photos to her family.
> 
> Gilroy wrote: "*Bailey Broadrick would be in tears if she knew how many guys were jerking to her naked body*." He was right. She was in tears. She *was* beaten down. But she is now fighting back and wants justice for what Gilroy did to her.

Compl. at 1–2 (emphasis in original).

5

Paragraphs 20, 104 and 105 relate to Ms. Broadrick's cancer diagnosis and treatment, and allegations that her cancer markers increased as a result of the stress allegedly caused by Mr. Gilroy's alleged actions.[2] *See* Compl. ¶¶ 20, 104, 105; *id.* ¶ 105 ("Gilroy's unlawful, harassing, and sociopathic actions are the most significant source of stress in Plaintiff's life, and the only source of stress severe enough to cause her cancer markers to increase."). Such allegations are highly relevant to Ms. Broadrick's damages claims. Paragraphs 97 and 100 likewise relate to Ms. Broadrick's alleged mental state upon retaining counsel and Mr. Gilroy's alleged removal of the alleged posts, *see* Compl. ¶¶ 97, 100,[3] and thus arguably "pertain to . . . the disputed issue[]" of mitigation of damages. *See Brady*, 101 F. Supp. 3d at 225.

Paragraph 25 alleges that Ms. Broadrick "cut ties with [Mr. Gilroy]" and "began dating someone else," and thus is relevant to Mr. Gilroy's alleged motive for his alleged actions. *See* Compl. ¶ 25. Moreover, paragraph 101 contains allegations that Ms. Broadrick alleges "confirmed [Mr. Gilroy's] identity" as the individual allegedly posting intimate photographs of her online, and therefore is relevant to an essential element of her claims. *See* Compl. ¶ 101 ("While it was always obvious that Defendant Gilroy was the individual who posted these photographs of Plaintiff online, Defendant Gilroy's response to Broadrick's act of defiance confirmed his identity as the perpetrator of the campaign to terrorize her."). Finally, paragraph 102 contains allegations of ongoing harm that are necessary to support Ms. Broadrick's claim for injunctive relief. *See* Compl. ¶ 102 ("Broadrick's defiance continues in the form of this lawsuit, as Defendant must be held

---

[2] Paragraph 20 states: "In 2020, Defendant flew to Arizona to visit Plaintiff while she was undergoing treatment and chemotherapy for cancer." Compl. ¶ 20. Paragraph 104 states: "Plaintiff is currently in remission from ovarian cancer. During recent doctor visits, her treating physician informed her that stress is causing her cancer markers to increase." *Id.* ¶ 20.

[3] Paragraph 97 states: "Upon retaining counsel, Plaintiff felt empowered for the first time in years." Compl. ¶ 97. Paragraph 100 states: "Upon receiving the slightest bit of pushback and the slightest sign of Plaintiff Broadrick's refusal to be a defenseless victim, Defendant decided to retreat from his sociopathic campaign to harass Plaintiff Broadrick." *Id.* ¶ 100.

accountable for his actions. Despite having locked the photos the moment he met resistance, his prior actions require injunctive relief lest he disturb the status quo and republish them or otherwise distribute them. Additionally, Defendant's posts still populate on online searches.").

In sum, Mr. Gilroy fails to show "that the allegations have no bearing on the issues in the case," *see Brady* 101 F. Supp. 3d at 225 (quotation omitted), nor does he cite to any case law suggesting that these allegations would be inadmissible. *See Lipsky*, 551 F.2d at 893 ("In deciding whether to strike a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible."); *Schramm v. Krischell*, 84 F.R.D. 294, 299 (D. Conn. 1979) ("If there is any doubt as to the possibility of relevance, a judge should err on the side of denying a Rule 12(f) motion, especially if the presence of the material at issue does not prejudice the moving party.").

Accordingly, his motion to strike these paragraphs will be denied.

### B. The Motion to Strike Material Improper Under Rule 10(b)

Under Federal Rule of Civil Procedure 10(b),

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b).

Mr. Gilroy moves to strike paragraphs setting forth the legal standard for Ms. Broadrick's and case law relevant to her claims, *see e.g.*, Compl. ¶¶ 123, 131, 132, 143, 144, 151,[4] and claims

---

[4] These paragraphs state the following:

> 123. In Connecticut, the elements for negligent infliction of emotional distress are: (1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress

7

that "[t]he inclusion of case cites does not comply with the requirements of FCRP 10[(b)]." Mot. at 2–3.

In response, Ms. Broadrick argues that Rule 10 "says nothing about whether one can plead the law" and "[Mr.] Gilroy offers nothing to suggest a plaintiff is prohibited from pleading the law." Opp'n at 8–9.

The Court agrees.

Assuming without deciding that the inclusion of case cites may be a basis for moving to strike under Rule 12(f), *see* Fed. R. Civ. P. 12(f) (courts "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."), Mr. Gilroy

---

was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress. *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003). . . .

131. In Connecticut, the elements for intentional infliction of emotional distress are: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 443 (2003).

132. "Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society . . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" (Citations omitted; internal quotation marks omitted.) *Appleton v. Board of Education*, 254 Conn. 205, 210-11, 757 A.2d 1059 (2000). Courts throughout the country routinely find that revenge porn is extreme and outrageous. *See, e.g., P.F. v. Brown*, 2024 NY Slip Op 51356(U), ¶¶ 3-4, 217 N.Y.S.3d 856 (Queens Sup. Ct. Sept. 27, 2024); *Hoewischer v. White (In re White)*, 551 B.R. 814, 821-22 (Bankr. S.D. Ohio 2016). . . .

143. In Connecticut, one is subject to liability for invasion of privacy through publicity to a matter concerning the private life "if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Ramsdell v. Hartford Hosp.*, 2019 Conn. Super. LEXIS 97, *22 (2019*); see also Perkins v. Freedom of Info. Comm'n*, 228 Conn. 158, 173 (1993).

144. Revenge porn is the epitome of invasion of privacy claims. *See, e.g., Malott v. Goodlett*, 2020 U.S. Dist. LEXIS 262130, at *11 (W.D. Ky. Dec. 30, 2020) (finding revenge porn met three categories of invasion of privacy claims, including unreasonable publicity). . . .

151. In Connecticut, the elements of a false light invasion of privacy claim are met if the matter published concerning the plaintiff (1) is not true; and (2) is such a major misrepresentation of the plaintiff's character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable individual in the plaintiff's position. *Goodrich v. Waterbury Republican-American, Inc*., 188 Conn. 107, 131 (1982).

Compl. ¶¶ 123, 131, 132, 143, 144, 151.

points to no case law suggesting that including relevant legal citations within the body of the Complaint is so improper as to warrant striking such allegations from the Complaint, and the language of Rule 10 does not require a plaintiff to replead such allegations. Recognizing that motions to strike are generally disfavored, courts in this Circuit have declined to strike similar pleadings that set forth relevant case law. *See Johnston v. City of Syracuse*, No. 5:20-CV-1497, 2021 WL 3930703, at *9 (N.D.N.Y. Sept. 2, 2021) ("Rule 12(f) is a disfavored remedy. . . Overcoming the general hostility for this remedy requires at least that the struck matter be 'redundant, immaterial, impertinent, or scandalous.' . . .Plaintiff's anticipatory legal arguments are none of those things. They are at least related to the case, even if they are beyond the scope of what should be contained in a pleading." (quoting Fed. R. Civ. P. 12(f))).

Accordingly, in the absence of any case law supporting Mr. Gilroy's motion to strike these allegations, let alone any showing that he would be prejudiced by their inclusion, the Court will deny his motion to strike these paragraphs. *See Gssime*, 2014 WL 810876, at *2 (citing *Holmes v. Fischer*, 764 F.Supp.2d 523, 532 (W.D.N.Y.2011) ("Rule 12(f) motions to strike are disfavored and not routinely granted, and it is the movant's burden to demonstrate prejudice by the inclusion of the alleged offending material.")).

### C. The Motion to Strike Count Six

"Connecticut recognizes the doctrine of promissory estoppel as laid out in the Restatement (Second) of Contracts, which 'states that ... [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" *Grossman v. Computer Curriculum Corp.*, 131 F. Supp. 2d 299, 308 (D. Conn. 2000) (quoting *D'Ulisse–Cupo v. Board of Directors of Notre Dame High School,* 520 A.2d 217

9

(Conn. 1987)). "A plaintiff claiming promissory estoppel under Connecticut law must prove (1) that the defendant did or said something intended to induce another party to believe that certain facts existed and to act on that belief, (2) that the plaintiff changed its position based on those facts, and (3) that doing so incurred some injury." *Taylor Theunissen, M.D., LLC v. United HealthCare Grp., Inc.*, 365 F. Supp. 3d 242, 247 (D. Conn. 2019) (citation omitted). "[P]romissory estoppel permits recovery based on a sufficiently clear and definite promise, even in the absence of the consideration required to create a contract." *Cweklinsky v. Mobil Chem. Co.*, 364 F.3d 68, 77 (2d Cir. 2004) (citing *D'Ulisse–Cupo*, 520 A.2d at 221). The Connecticut Supreme Court has "stated explicitly that 'a promise need not be the functional equivalent of an offer to enter into a contract.'" *Cweklinsky*, 364 F.3d at 78 (citing *Stewart v. Cendant Mobility Services Corp.,* 837 A.2d 736, 742–43 (Conn. 2003)).

Mr. Gilroy argues that "[a] cause of action premised on Promissory Estoppel relies on facts establishing a contractual agreement and then a subsequent breach of that agreement" and that "[t]he facts alleged do not support an action seeking relief premised on Promissory Estoppel; such relief is inconsistent with the facts alleging tortious conduct." Mot. ¶ 16.

In response, Ms. Broadrick argues that she "has properly stated a claim for promissory estoppel" based on Mr. Gilroy's alleged promise to "hold the intimate images of her in confidence." Opp'n at 10. She further argues that "a plaintiff is not prohibited from raising claims that sound in both tort and contract" and "Rules 8(d)(2) & (3) allow a party to 'alternative and inconsistent legal theories.'" *Id.* at 10–11.

The Court agrees.

Here, Ms. Broadrick alleges that Mr. Gilroy "explicitly promised her that he would neither share nor show the intimate photos or videos of her to any third parties," Compl. ¶ 12, that she

reasonably relied upon this promise when sharing intimate photos, *see id.* ¶¶ 13, 14, and that she was injured because Mr. Gilroy allegedly shared her intimate photos with third parties, *see id.* ¶¶ 96, 105. At this early stage, this is sufficient to state a claim for promissory estoppel.

To the extent that Mr. Gilroy argues Ms. Broadrick's allegations relate to "either a violation of a federal statute or a common law action sounding in tortious conduct," she cannot bring a cause of action sounding in contract, *see* Mot. at 4, Mr. Gilroy cites no support for this assertion. In fact, under both relevant case law and Federal Rule of Civil Procedure 8(d), "[i]t is well established that a plaintiff may plead alternative theories of liability." *Bussolari v. City of Hartford*, No. 3:14-CV-00149 (JAM), 2016 WL 4272419, at *3 (D. Conn. Aug. 12, 2016) (citing Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.")); *see also St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010) ("At the pleading stage, Plaintiff is not required to guess whether it will be successful on its contract, tort, or quasi-contract claims. The Federal Rules of Civil Procedure explicitly permit Plaintiff to assert claims in the alternative.").

Even where "allegations were not specifically pleaded as 'in the alternative,' [the Second Circuit has] ruled that Rule 8[(d)] offers sufficient latitude to construe separate allegations in a complaint as alternative theories[.]" *Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999); *see also* Fed. R. Civ. P. 8(d)(2)("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."). As a result, even if Ms. Broadrick cannot recover damages under each claim asserted in the Complaint, she is still entitled to plead multiple theories of relief. *See Hughes v. Patrolmen's Benev. Ass'n of City of New York, Inc.*, 850 F.2d 876, 882 (2d Cir. 1988) (applying New York law, and concluding "it was proper to

11

allow plaintiff to plead, in the alternative," two tort claims although state law prohibited recovery for both tort claims).

Accordingly, the motion to strike Count Six will be denied.

### IV. CONCLUSION

For the foregoing reasons, the motion to strike is **DENIED**.

**SO ORDERED** at New Haven, Connecticut, this 13th day of June, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE